Appeal of **UVALDE COMPANY.**                 Docket No. 572.

A corporation engaged in street paving and receiving upon the accrual basis the contract price upon completion of the construction work may not withhold from gross income in the taxable year, through reserves, a portion of the contract price estimated to be the amount required to fulfill its contract obligations to maintain the pavement in good condition for a period of three, five, and ten years, and for possible future expenses of obtaining new paving contracts.

Submitted February 16, 1925; decided April 6, 1925.

*H. A. Mihills, C. P. A.*, for the taxpayer.

*J. D. Foley, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This is an appeal from a determination by the Commissioner proposing the assessment of additional income and profits taxes for the fiscal year ended June 30, 1921, in the amount of $37,670.34, as outlined in the deficiency letter mailed to the taxpayer on September 19, 1924.

FINDINGS OF FACT.

Taxpayer is a Texas corporation organized in June, 1920, and was engaged during the taxable year in the business of constructing rock asphalt street pavements. It had no predecessor, and in September, 1921, after completing certain paving work during the fiscal period ending June 30, 1921, sold all of its assets to another paving company, and remained inactive until September, 1923, when activities were resumed.

During the fiscal year ending June 30, 1921, taxpayer constructed certain street pavements under contracts with the city of San Antonio; all income received for the taxable year being from contracts with that city obtained on competitive bids. All bids were required to be made and all contracts entered into were on the basis of paving construction with maintenance and without maintenance. All contracts entered into by taxpayer from which its income during the taxable year was received contained provisions for maintenance. The pavements specified in the contracts represented several classes of construction. The specifications adopted by the city usually required a combination of a 1-inch asphalt surface on the cheaper built streets, viz., gravel or macadam base; a 2-inch asphalt surface on a macadam base in certain residential districts; and a 3-inch asphalt surface with a concrete base on business or semi-business streets. Three typical contracts were introduced in evidence each

containing the same provisions respecting construction and payment, and containing, respectively, maintenance periods of three, five and ten years. The contracts provided that the construction work specified therein should be completed within 90 days, as follows:

Contractor will prosecute the work with such force and in such manner and order and at such times, places and seasons, all as may be directed by the Engineer; and *he will carry the work to full completion on his part and tender the same to City for acceptance before the expiration of 90 (ninety) consecutive working days.* * * *.

In case Contractor shall fail to complete the work under this contract to the satisfaction of Engineer within the time limited and allowed as aforesaid, then by reason of the fact that time is an essential element of this contract, it is agreed that the Contractor shall and will pay to the City the sum of Twenty ($20.00) Dollars for each and every day by which the time consumed in such performance and completion may exceed the time allowed for that purpose, * * *. (Italics ours.)

All contracts were completed during the taxable year within the time required to the satisfaction of, and were accepted by, the city of San Antonio. The contracts provided for payment for work completed, as follows:

Contractor shall not be entitled to demand or to receive payment of any sum in excess of the amount to be paid upon such monthly estimates, unless and until said work and improvement shall be entirely completed in the manner set forth in this contract and the specifications and drawings therefor, and such completion duly certified by the Engineer; and also unless and until each and every one of the stipulations of this contract to be performed prior to the completion of the original construction of the work are complied with and the work fully completed to the satisfaction of the Mayor, all of which shall be evidenced by the final certificate to be dated and signed by the Engineer certifying to the completion of the work and the acceptance thereof by City, and the approval of such certificate by the signature of the Mayor. Within thirty days after the date of such final certificate, the Engineer shall prepare his final estimate as the basis for the settlement upon the considerations and account of this contract, whereupon City will pay and deliver to Contractor the several considerations, cash payments and assessment certificates all as provided in and subject to all the provisions of this contract and the procedure ordinance of the City, * * *.

The action of the Engineer by which Contractor is to be bound and concluded according to the terms of this contract, shall be that evidenced by the final certificate of the Engineer.

Upon the completion of the work specified in any contract and the acceptance by its engineer, the city, in accordance with the terms of the contract, paid to the taxpayer in cash one-third of the contract price in full settlement of its proportion of the cost of the work, at the same time executing and delivering to the contractor negotiable assessment certificates as authorized by law against abutting property owners for the remaining two-thirds of the contract price. The assessments bore interest at 7 per cent and were payable in six annual installments. These certificates, which constituted a lien by state statute against the property of the persons named therein, were as follows:

Paving Certificate　　　　　　　　Coupon Number ONE　Principal Due Hereon
No. 8827　　　　　　　　　　　　　　　　　　　　　　　　$60.48

WHEREAS THE CITY OF SAN ANTONIO, TEXAS, has issued a certain paving certificate against certain property abutting on QUEEN ANNE COURT Street, in said City, also against TOM B. PAPAS the owner of such property, such certificate being for the total principal sum of *THREE HUNDRED SIXTY TWO & 68/100 $362.68* Dollars, payable in six equal installments, together with interest thereon at the rate of seven (7) per cent per annum from and after the *12th* day of *MAY, 1921* until paid; the first five of said

installments being evidenced by coupons attached to said certificate; and at the maturity date of each successive installment, and as a part thereof, all interest accrued to such date shall be paid both on such maturing installment and also on all unmatured installments.

THIS COUPON CERTIFIES that THIRTY DAYS from and after said date above mentioned upon surrender hereof receipted in full and subject to the terms of said certificate THE UVALDE COMPANY or the BEARER hereof, is entitled to receive from said owner the FIRST installment of said principal in the sum of *SIXTY & 48/100* Dollars, together with all accrued interest as herein stated; but the principal of this coupon may be paid at any time before maturity, with interest thereon to the date of such payment, leaving interest on unpaid principal to be paid at the maturity date hereof.

IN WITNESS WHEREOF, said City has caused this coupon to be executed, this *12th* day of MAY, A. D. 1921

CITY OF SAN ANTONIO.
O. B. BLACK, *Mayor.*

ATTEST:
    BEN A. CORDELL, *City Clerk.*

The taxpayer agreed to maintain the pavements constructed for a period depending upon the nature of the paving specified, in accordance with the provisions of the contracts, as follows:

Contractor covenants and agrees to guarantee, repair and maintain said paving and improvements, and all parts thereof included under this contract, under such rules and regulations as may be established by the City, and in accordance with the following conditions and provisions which shall be deemed to be incorporated as a part of the Maintenance Bond of Contractor as well as of the contract, to-wit; That Contractor shall and will so construct said paving and also said other improvements, if any, and all parts of said paving and other improvements included under this contract, and use such materials in the construction thereof so that the same shall be and remain in good condition and repair for and during the full guaranty or maintenance period of at least five (5) years from and after the date of the certificate of the Engineer of said City evidencing the completion and acceptance by the City of such paving or other improvements; so that at the end of said maintenance period and at all times prior thereto, the said paving and other improvements, if any, shall be and remain in a sound, smooth and serviceable condition. * * *. And said Contractor shall and will during all of said period, repair and maintain promptly, and at his own cost and expense, said paving and other improvements, if any, and every part thereof, so that same shall be and remain at all times in the condition and free from the defects hereinabove specified.

For the faithful performance of the above undertaking respecting repairs and maintenance for the period specified in the contracts, taxpayer entered into bonds with the city, each to the extent of 25 per cent of the amount of the contract for construction.

During the taxable year the taxpayer received in cash from the City and by negotiable assessment certificates against abutting property owners for pavement work completed and accepted by the city, after all expenses, a sum in excess of $120,000; the amount so received being accrued upon its books as income at the time of the acceptance by the city of the work completed under its contracts. This was the only source of taxpayer's income for the taxable year.

From the amounts received and accrued taxpayer set up on its books a reserve of $68,759.82, which was estimated by its engineer to be the amount necessary to maintain the pavements completed during the taxable year for the ensuing three, five, or ten years, as the case might be, as required by each contract.

For the purpose of securing new business, the taxpayer set up on its books in the taxable year ending June 30, 1921, out of income from contracts completed, as promotion expense, the sum of $12,-

914.85, based upon paving completed during the year, each contract bearing its proportionate share of the reserve so set up; said amount being intended to cover selling, advertising, and sundry expenses in securing new business. It may be noted that a larger amount of promotion costs is expended by this class of contractors during "bad" years than in "good" years, hence the reserve increases during those years in which considerable work is completed.

The taxpayer kept its books and rendered its return on the accrual basis. In arriving at its net taxable income it deducted from gross income the amounts of the reserves above mentioned, viz., $68,-759.82 and $12,914.85. These amounts the Commissioner disallowed, thereby increasing the taxable net income and arriving at a deficiency in tax of $37,670.34.

The reserves for maintenance and promotion expense were not predicated upon amounts theretofore actually expended but were based upon estimates which, in the judgment of taxpayer's engineer, were sufficient to fully cover all future maintenance costs over the guaranty period and such future expense as might be necessary to obtain future or additional paving contracts.

No portion of the reserves standing on taxpayer's books at the close of the taxable year, and deducted from gross income, represented expenditures incurred or paid, but were for the purpose of taking care of unincurred possible future expenses.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LITTLETON: This appeal presents a similar question to that decided by this Board in the *Appeal of Consolidated Asphalt Company*, 1 B. T. A. 79. It is contended, however, by the taxpayer that the facts in this appeal are different from those which obtained in the *Consolidated Asphalt Company's Appeal* and are such as to entitle it to report its income upon a long-term contract basis as provided for in article 36, Regulations 45. Granting, without deciding, that article 36 is authorized by law, the contracts from which taxpayer received its entire income were not long-term contracts within the definition of such contracts as therein set forth. These contracts required that the work specified should be completed within ninety days, and provided further a penalty of Twenty ($20.00) Dollars a day liquidated damages for each day beyond the ninety-day limit. We can find no authority for construing such a contract as a long-term contract.

It is further contended that these contracts come within the meaning of "long-term contracts," for the reason that they contain a provision for the maintenance of the paving constructed, for a period of from three to ten years; that such maintenance requirement was a part of the contract for construction and, therefore, that it was entitled to report its income on a long-term contract basis. We cannot agree with such contention. The maintenance provision may have been and was embodied in the contracts for the construction, but it was a separate and collateral undertaking based upon a con-

tingency. Any taxpayer suspending business at the end of any taxable year and having at that time future collateral undertakings might possibly find it necessary to expend a portion of the income received in a prior year in fulfilling obligations in connection with transactions which produced said income if occasion therefor should arise, but this does not entitle a taxpayer to withhold from taxable income, in addition to all expenses paid or incurred within the taxable year, a liberal portion of the income because he may possibly be called upon to expend sums to make good guaranties entered into respecting work completed and for which he received full compensation within the taxable year. This taxpayer is not seeking to report strictly on a long-term contract basis for the reason that it did not have long-term contracts. It had ninety-day contracts containing a provision that it would construct the work in such manner that it would remain in good condition for a period of from three to ten years, depending upon the nature of construction, and, collaterally, it agreed that in the event of any defects appearing it would repair the same at its own cost. If no defects occurred no expenditure would be necessary. It would be impossible, upon any basis, definitely to determine what amount would be necessary to keep the street in good condition. Even taxpayer itself does not contend that it had actually incurred any determined liability in the taxable year to pay any definite amount, all expenses paid or incurred being deducted. For such possible future expense, taxpayer withheld from taxable income the sum of $68,759.82, charging that amount on its books as a reserve for maintenance. If it should not in the future be required to make repairs equal to such sum the amount would not be expended, and we cannot find in the revenue law any authority for deducting from income in any taxable year sums, as expenses, neither paid nor incurred within the year. The law specifically provides to the contrary. Section 234 (a).

This taxpayer having derived considerable taxable income during one taxable year, and thereafter remaining inactive for several years, is seeking to reduce its taxes by spreading its income over several 12-month periods instead of one 12-month period, as required by law. This it cannot do. In the *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79, this Board said:

> We have no doubt that the amount is income taxable under the sixteenth amendment as gain derived from capital or labor or both combined, *Doyle* v. *Mitchel Bros. Co.*, 247 U. S. 179, and *Eisner* v. *Macomber*, 252 U. S. 189, and that an amount thus received comes within the gross income described in sections 213 and 233 of the 1918 Act. If it can be excluded from taxable net income, it must be by reason of a statutory deduction and not because it is not in the first instance income. It is quite true that not all amounts received constitute income; but when a taxable corporation in the course of its business of making profits receives contractual compensation for work done and material furnished, it can not contend that a part of the amount received is not income because the taxpayer is subject to a collateral obligation the fulfillment of which may require it to spend some of the amount. This is in substance what we said in the *Appeal of William J. Ostheimer*, 1 B. T. A. 18. And as we there said, this result is not changed because in the light of general experience the taxpayer feels reasonably certain of the necessity to expend the amount and is impelled by business prudence to set up a reserve therefor. In this instance good accounting and the statute may not be in strict accord, since Congress may with entire fairness tax what a very conservative and prudent business man may wish to hold in reserve. If, as is now the law in

respect of the deduction for bad debts, a reasonable reserve were deductible, it would be pertinent to consider whether in this case the reserve had been reasonably estimated.

What was said in that appeal applies here. The fact that the taxpayer kept its books and rendered its return upon an accrual basis does not change the situation.

What we have said in respect to the amount reserved for maintenance applies equally to the amount of $12,914.85 withheld as a reserve for future promotion expenses. No part of the amount deducted as promotion expense was paid or incurred within the year. The expenditure of any amount for that purpose was purely optional and, if deductible at all, would be deductible in the year in which paid or incurred. The taxpayer, knowing that it would be inactive during the subsequent taxable year and in all probability have no taxable income, attempts by these reserves to reduce the tax on its true net income for the fiscal year ended June 30, 1921. Under the law taxable net income is gross income from all sources for any taxable year less certain authorized deductions and exemptions. The deductions herein claimed cannot be found among those authorized by law and the action of the Commissioner in holding the amounts to be income for the fiscal year ended June 30, 1921, was correct.